USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **11/20/2025**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRANCE GREENE,

                                    Plaintiff,

                -against-

DANIEL MARTUSCELLO, et al.,

                                    Defendants.

---

24 CV 5228 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

     Plaintiff Terrance Greene ("Plaintiff"), who was incarcerated at Sing Sing Correctional

Facility ("Sing Sing") at the time of the allegations, commenced this *pro se* action on July 9, 2024,

pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983").[1] Plaintiff asserts claims against Daniel

Martuscello, Commissioner of the New York State Department of Corrections and Community

Supervision ("DOCCS") ("Defendant Martuscello"); Superintendent Marlyn Kopp, the warden at

Sing Sing; Corrections Officer K. Barnes ("Defendant Barnes"), a corrections officer at Sing Sing;

John Doe #1, a male nurse at Sing Sing's medical clinic; John Does #2, #3, #4, and #6, corrections

officers at Sing Sing; John Doe #5, another nurse at Sing Sing's medical clinic; and John Does #7

and #8, officers from New Jersey, alleging that Defendant Barnes violated his rights when he filed

a false misbehavior report against him and alleging that prison officials violated his rights under

the Eighth Amendment when they failed to provide him with adequate medical care. (*See generally*

Amended Complaint ("Am. Compl."), ECF No. 36.)[2]

---

[1] Shortly after the time period of the allegations, Plaintiff was transferred to Essex County Correctional Facility in
New Jersey, where he currently remains incarcerated.
[2] For ease of reference to the Parties' filings, including the attachments to Plaintiff's Amended Complaint and
Opposition, the Court's references to page numbers will correspond to the page number of the PDF as filed on the
case docket in ECF.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants have moved to dismiss the Amended Complaint. Defendants filed their Memorandum of Law ("Def. Mot.", ECF No. 46) and Reply ("Def. Reply", ECF No. 50) in support of their motion to dismiss. Plaintiff filed an opposition and a sur-reply. ("Pl. Opp", ECF No. 44; "Pl. Sur-Reply", ECF No. 53.)

For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Allegations

The following relevant facts are derived from the Amended Complaint and the documents appended thereto and are assumed to be true for the purposes of resolving this motion.

Plaintiff alleges that on February 15, 2024, at approximately 9:25 p.m., Plaintiff was cut across his left eye by an unknown individual while in the middle of a melee. (Am. Compl. at 7.) Plaintiff states that correction officer Defendant Barnes never noted in his misbehavior report that Plaintiff had been cut with a weapon and that he was not involved in the melee. (*Id.*)

After being cut, Plaintiff was taken to Sing Sing's medical clinic, where he claims he received "insufficient medical care" when male nurse Defendant John Doe #1 wrapped Plaintiff's wound without cleaning it, despite not knowing what Plaintiff had been cut by and Plaintiff's request that he clean the wound. (*Id.* at 7-8.) Plaintiff claims that this insufficient care ultimately led to the wound becoming infected later on. (*Id.* at 7-8.)

After his visit to Sing Sing's medical clinic, Plaintiff was placed in a bullpen in the clinic from approximately 9:40 p.m. to 5:00 a.m., awaiting transport to an outside hospital. (*Id.* at 8.) Plaintiff claims that during this time he repeatedly "asked for assistance" and complained about

"the pain that [he] was in" and the blood that was [coming] down [his] face and into [his] eye." (*Id.*) Plaintiff claims that several nurses and corrections officers walked past him and ignored his pleas, including Defendant John Doe #2, a Sing Sing corrections officer who was in a "bubble station" nearby. (*Id.*)

At approximately 5:00 a.m., now on the morning of February 16, 2024, Sing Sing correction officers Defendants John Doe #3 and John Doe #4 transported Plaintiff to Westchester Medical Center, where Plaintiff was first seen by medical personnel staff at approximately 7:00 a.m. (*Id.*) At approximately 2:00 p.m., Plaintiff had his "lacerations repaired." (*Id.*) Plaintiff claims that the doctor "told [him] and officers John Doe #3 and John Doe #4" that he had "received 28 stitches" and that he had "prescribed…wound care and antibiotic for [Plaintiff's] wound." (*Id.* at 8-9.) Plaintiff claims that despite these instructions from the doctor, when Defendants John Doe #3 and John Doe #4 transported Plaintiff back to Sing Sing, they bypassed Sing Sing's medical clinic and brought Plaintiff back to his cell. (*Id.* at 9.)

On the evening of February 16, 2024, while Sing Sing medical nurse Defendant John Doe #5 was "handing out medication," Plaintiff asked about his own medication and Defendant John Doe #5 responded that there was no medication for Plaintiff. (*Id.* at 9.) Plaintiff claims he told Defendant John Doe #5 that he was in pain and that his face was swelling, to which Defendant John Doe #5 replied "that's expected and kept it moving without seeing about [Plaintiff's] conditions." (*Id.* at 9.)

At approximately 11:00 p.m., during the officers' go-around, Plaintiff asked to be seen for an "emergency sick call" because he was in pain and his face had become increasingly swollen. (*Id.* at 9.) Plaintiff claims Sing Sing correction officer Defendant John Doe #6 told him that "no

one is at the clinic," that "this wasn't an emergency" and that "[he] could wait until the morning shift." (*Id.* at 9.)

On the morning of February 18, 2024, at approximately 7:00 a.m., Plaintiff informed a correction officer of his pain and head swelling. (*Id.* at 10.) Plaintiff claims that the officer "took one look at [him] and ran and called medical and [he] was rushed back to Westchester Medical Center." (*Id.*) Plaintiff claims that at Westchester Medical Center, the attending nurse and doctor were "livid" that he had returned so quickly now with an "infection and cellulitis of the face" and that he was not given the medical care at Sing Sing that they had prescribed on his first visit on February 16, 2024. (*Id.*) The nurse and doctor asked Plaintiff whether anyone had checked his wounds after he left the hospital the first time, whether he had received wound care, and whether he had received antibiotic, to which Plaintiff replied no to all three. (*Id.*) Plaintiff claims when he arrived back at Sing Sing, he was once again taken directly to his cell, without stopping by the medical clinic. (*Id.*)

During the morning and afternoon medicine run on February 19, 2024, Plaintiff again asked Sing Sing medical nurse Defendant John Doe #5 about his medication for his pain and swelling and was ignored. (*Id.* at 11.)

On February 20, 2024, New Jersey officers Defendants John Doe #7 and John Doe #8 picked Plaintiff up from his cell to transfer him to Essex County Correctional Facility in New Jersey, pursuant to an Interstate Agreement on Detainers ("IAD"). (*Id.*) Plaintiff claims he told these officers that he had a "without fail appointment at the hospital" and prescribed medication, but the officers ignored him. (*Id.*)

## LEGAL STANDARD

**Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit."[3] *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, "where, as here, [P]laintiff proceeds *pro se*, the court must "construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].'" *Corbett v. Annucci*, 2018 U.S. Dist. LEXIS 24291, 2018 WL 919832, at *5 (S.D.N.Y Feb. 12,

---

[3] This district also has held that a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint," when a plaintiff proceeds pro se. *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). Accordingly, for purposes of resolving this motion, the Court accepts as true the factual allegations in Plaintiff's Complaint and opposition papers, to the extent they are all consistent, and draws all reasonable inferences in Plaintiff's favor.

2018); *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 U.S. Dist. LEXIS 126543, 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

II.    **Claims Against Defendants Commissioner Martuscello, Superintendent Marlyn Kopp, and Correction Officer K. Barnes**

Plaintiff brings claims pursuant to Section 1983, alleging violations of his Eighth Amendment right to adequate medical care. Plaintiff further alleges a constitutional violation arising from a falsified misbehavior report.

As clarified by the Supreme Court in *Ashcroft v. Iqbal*, "vicarious liability is inapplicable to § 1983 suits." 556 U.S. 662, 676 (2009). Accordingly, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" and "a plaintiff must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution." *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting same in *Iqbal*); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (upholding a district court's dismissal of claims against a warden in a correctional center where plaintiff did not allege the warden's personal involvement in, or awareness of, the health, safety, and communications issues raised by plaintiff); *Wright v. Smith*, 21 F. 3d 496, 501 (2d Cir. 2003) (noting that a defendant in a § 1983 action "[cannot] be held personally responsible simply because he was in a high position of authority in the prison system"); *Ayers v. Coughlin*, 780 F.2d

205, 210 (2d Cir.1985) ("[P]laintiff's claim for monetary damages against [the Commissioner] requires a showing of more than linkage in the prison chain of command.").

Because there is a question of whether Defendants Commissioner Martuscello, Superintendent Kopp, and Correction Officer K. Barnes were personally involved in the alleged constitutional violations, the Court will first the address the claims against each of these defendants in turn.

### 1. Defendant Commissioner Martuscello

In his Amended Complaint, Plaintiff does not identify a single action of Defendant Martuscello's that violated Plaintiff's Eighth Amendment rights. Plaintiff alleges that Defendant Martuscello failed to have all weapons removed from Sing Sing so that individuals could not be assaulted with them. (*See* Am. Compl. at 11.) Plaintiff further alleges that Defendant Martuscello was responsible for informing the New Jersey correctional officers who transferred Plaintiff to a New Jersey correctional facility—identified as Defendants John Doe #7 and John Doe #8—of Plaintiff's pending medical appointment and prescribed medication, but failed to do so. (*Id.* at 14.) Neither allegation is sufficient to sustain an Eighth Amendment claim against Defendant Martuscello because these claims arise from Defendant Martuscello's position of authority as Commissioner of DOCCS, and not his direct actions. (*Id.* at 12 ("[E]verything after that was a clear violation of my right due to insufficient care and safety under DOCCS supervision in New York that Daniel Martuscello governs as a whole.")). First, Plaintiff's barebones allegations that Defendant Martuscello was responsible for ensuring all weapons were removed from the facility fails to show how Defendant Martuscello was personally involved in any action that violated Plaintiff's rights. While "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners…not every injury suffered by one prisoner at the hands of another

translates into constitutional liability for prison officials responsible for the victim's safety." *Warren v. Goord*, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008), *aff'd,* 368 F. App'x 161 (2d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To establish such liability, Plaintiff must show that Defendant Martuscello "[knew] that inmates face[d] a substantial risk of serious harm" and "disregarded that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Brennan*, 511 U.S. 847). Here, Plaintiff does not show that Defendant Martuscello had any knowledge of the presence of weapons in the facility or any knowledge of the melee at all. Even assuming that Plaintiff meets the knowledge requirement, Plaintiff fails to show that Defendant Martuscello was personally responsible for taking reasonable actions against the presence of weapons at Sing Sing, but failed to do so.

Second, Plaintiff's allegations appear to suggest that Defendant Martuscello, by virtue of his position as Commissioner of DOCCS, is vicariously liable for the actions of the Sing Sing officers who allegedly failed to inform Defendants John Doe #7 and John Doe #8 that Plaintiff had a pending medical appointment and had been prescribed medication prior to his transfer to Essex County Correctional Facility. (*See* Am. Compl. at 11 ("Commissioner Martuscello governs all corrections and medical staff and no one gave these officers [John Doe #7 and John Doe #8] my without fail orders to be seen again by the hospital within 1 week and prescription for Bactrim as an outpatient.")). However, such vicarious liability is, again, "inapplicable to § 1983 suits." *Iqbal*, 556 U.S. at 676. To the extent Plaintiff intends to assert that Defendant Martuscello is liable because Defendants John Doe #7 and John Doe #8 failed to ensure Plaintiff's medical appointment or medication, the Commissioner of the New York State Department of Corrections and Community Supervision has no authority over out-of-state officers or over the correctional departments of other jurisdictions.

Accordingly, Plaintiff fails to allege facts demonstrating Defendant Martuscello's personal involvement in the alleged constitutional violations. Even assuming Plaintiff's medical needs were not adequately addressed during or after his transfer, the Amended Complaint contains no factual allegations suggesting that Defendant Martuscello personally participated in, directed, or was even aware of the alleged misconduct. In the absence of such allegations, Plaintiff's claims against Defendant Martuscello must be dismissed.

### 2. Defendant Superintendent Marlyn Kopp

Plaintiff similarly fails to make any substantive allegations against Defendant Kopp, whom Plaintiff claims was responsible for his allegedly untimely transport to Essex County Correctional Facility. In support of this claim, Plaintiff alleges that Defendant Kopp, as Superintendent of Sing Sing, authorized Plaintiff's transfer to New Jersey and failed to inform the New Jersey transport officers—Defendants John Doe #7 and John Doe #8—of Plaintiff's pending medical appointment and prescribed medication. (*See* Am. Compl. at 11; Pl. Opp. at 8 ("Superintendent Marlyn Kopp gave custody to New Jersey officers John Doe 7 and 8… Superintendent Marlyn Kopp fail[ed] to give prescribed hospital orders or injury reports to Essex [County Correctional Facility].")). Plaintiff further contends that Defendant Kopp's signature on the IAD authorizing Plaintiff's transfer demonstrates Defendant Kopp's awareness of Plaintiff's medical condition. (*See* Pl. Opp. at 2 ("Superintendent Marlyn Kopp['s] signature on said IAD giv[ing] custody to another state to Plaintiff with serious injuries.")) However, the record reflects that all of Defendant Kopp's signatures on the IAD custody documents are dated January 10, 2024 and January 11, 2024. (*See* Pl. Opp. at 13–17.) By Plaintiff's own allegations, the subject incident occurred on the evening of February 15, 2024—more than a month after the IAD was executed. (*See* Am. Compl. at 7.) Thus, at the time Defendant Kopp signed the transfer documents, the alleged injury and resulting medical

condition had not yet occurred, and Defendant Kopp could not have possessed any knowledge of them. Plaintiff also fails to allege any facts suggesting that Defendant Kopp subsequently became aware of the incident or of Plaintiff's medical needs prior to his transfer on February 20, 2024.

Accordingly, because Plaintiff has not alleged facts showing that Defendant Kopp was personally involved in the events underlying his claims, the claims against Defendant Kopp must be dismissed.

### 3. Defendant Correction Officer K. Barnes

Plaintiff's sole allegation against Defendant Barnes is that he "lied" in the misbehavior report concerning the melee by omitting that a weapon was used in the assault against Plaintiff and that Plaintiff was not involved in the altercation. (*See* Am. Compl. at 7; Pl. Opp. at 1.) This allegation, standing alone, fails to state a constitutional violation. It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Absent additional allegations that the false report led to a deprivation of due process or was filed in retaliation for the exercise of protected conduct, such a claim is not cognizable under § 1983. Because Plaintiff has not alleged any facts establishing Defendant Barnes's personal involvement in a constitutional deprivation or any cognizable injury resulting from the alleged false report, Plaintiff fails to state a viable claim against Defendant Barnes. Accordingly, the claims against Defendant Barnes are dismissed.

## III.    Eighth Amendment Claims Against Defendants John Does #1 – #8

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). In order to establish an Eighth

Amendment claim arising out of inadequate medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The deliberate indifference standard includes both an objective and a subjective prong. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.* An official acts with the requisite culpable state of mind—that is, with deliberate indifference—when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

The Court now addresses Plaintiff's claims against Defendants John Does #1–#8 in turn.

### 1. Defendant John Doe #1

Plaintiff asserts that on February 15, 2024, he was assaulted by an unidentified inmate, sustaining a "cut across [his] left eye." (Am. Compl. at 7.) Following the incident, he was taken to Sing Sing's medical clinic, where he was treated by nurse Defendant John Doe #1. Plaintiff alleges that Defendant John Doe #1 "wrapped [his] wound without cleaning it, not knowing what [Plaintiff] was cut by," and disregarded Plaintiff's requests that the wound be cleaned. (*Id.* at 7–8.) Plaintiff contends that the nurse's failure to clean the wound caused it to become infected, thereby worsening his condition and prolonging his pain. (*Id.* at 8, 12.)

Based on the facts alleged in the Amended Complaint and the supporting exhibits, the Court finds that Plaintiff's medical needs were sufficiently serious. As the Second Circuit has explained, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Nonetheless, courts consider several factors, including: "(1) whether a reasonable doctor or patient would perceive the medical need as important and worthy of comment or treatment; (2) whether the condition significantly affects daily activities; and (3) the existence of chronic and substantial pain." *Id.*

Here, Plaintiff's injury was significant. According to both his allegations and medical records from Westchester Medical Center dated February 16, 2024—the day after the incident— Plaintiff sustained "a slashing to his forehead down to the cheek" that required twenty-eight stitches to close. (*See* Am. Compl. at 8, 21.) When Plaintiff was initially treated at Sing Sing's medical clinic by Defendant John Doe #1, blood from the wound was running down his face. (*Id.* at 8.) Under these circumstances, any reasonable doctor or patient would have recognized that Plaintiff's wound was "worthy of treatment" and, therefore, sufficiently serious. *Wright*, 315 F.3d at 162.

Moreover, while "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim," deliberate indifference may exist where "a physician consciously chooses an 'easier and less efficacious' treatment plan." *Armstrong*, 143 F.3d at 703 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)); *see also Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment.") (citing *Armstrong*, 143 F.3d at 702). In this case, although Defendant John Doe #1 wrapped Plaintiff's wound, he failed to clean it beforehand despite Plaintiff's repeated requests, ultimately resulting in infection. Medical records from Westchester Medical Center dated February 18, 2024—two days after Plaintiff's initial hospital visit—indicate that Plaintiff had developed an "acute skin infection" and

"cellulitis of face." (Am. Compl. at 26.) It is common medical knowledge that the proper treatment of an open wound, particularly one as extensive as Plaintiff's, requires cleaning to prevent infection. A medical professional would be aware of this and, therefore, would also understand the risks posed by failing to sanitize the wound. While whether "a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case," *Armstrong*, 143 F.3d at 703, it is also true that "[e]vidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003); *see also Brennan*, 511 U.S. at 842 (noting that "whether a prison official had the requisite knowledge of a substantial risk" may be inferred "from the very fact that the risk was obvious."). Here, Defendant John Doe #1, a trained medical provider, would have been aware of the risks of not cleaning a significant wound before wrapping it up and nevertheless chose not to clean it, despite Plaintiff's repeated requests that he do so. Further, Plaintiff partially attributes the infection his wound later developed to Defendant John Doe #1's failure to clean the wound. While this is a question of fact for a jury, at this stage "[the Court] must accept [Plaintiff's] allegations as true and may not dismiss the case unless [it] is clear that it would be impossible for [Plaintiff] to make out a legally cognizable claim." *Armstrong*, 143 F.3d at 703.

Accordingly, the Court finds that the allegations, as pled, move the needle ever so slightly to meet the plausibility pleading standard, indicating that Defendant John Doe #1 acted with deliberate indifference when he chose not to clean Plaintiff's severe laceration to the face which required twenty-eight stitches to close.

### 2. Defendant John Doe #2

Plaintiff alleges that while awaiting transport to Westchester Medical Center, he sought aid from Defendant John Doe #2, the officer stationed in the bubble nearest to the bullpen where Plaintiff was being held, as he was bleeding from his wound. (Am. Compl. at 8.) Plaintiff asserts that between approximately 9:40 p.m. on February 15, 2024, and 5:00 a.m. the next day, Plaintiff's "pleas for help" were ignored by Defendant John Doe #2. (*Id.*)

While the Court has already found that Plaintiff's medical condition was sufficiently serious, Plaintiff nevertheless fails to allege facts demonstrating that Defendant John Doe #2 acted with deliberate indifference to that condition. The mere fact that Defendant John Doe #2 ignored Plaintiff's requests for assistance, without more, is insufficient to establish the requisite state of mind under the Eighth Amendment. Plaintiff does not allege that Defendant John Doe #2 was aware of the extent of his injury, that he deliberately refused medical treatment despite such awareness, or that he knew his inaction would cause a "substantial risk of serious harm." *Brennan*, 511 U.S. at 837. Further, by the time Plaintiff encountered Defendant John Doe #2, Plaintiff had already been treated by Defendant John Doe #1 and was awaiting transport to an outside hospital for further evaluation and care. Under these circumstances, it would have been reasonable for Defendant John Doe #2 to believe that Plaintiff was receiving appropriate medical attention and that no further immediate intervention was necessary. Accordingly, the allegations do not plausibly support a finding that Defendant John Doe #2 acted with deliberate indifference to Plaintiff's medical needs, and the claims against him must be dismissed.

### 3.  Defendants John Doe #3 and John Doe #4

Plaintiff claims that Defendants John Doe #3 and John Doe #4 transported him to Westchester Medical Center, where Plaintiff had his lacerations repaired by a doctor who "told [Plaintiff] and officers John Doe #3 and John Doe #4" that he had "received 28 stitches" and that

the doctor had "prescribed…wound care and antibiotic for [Plaintiff's] wound." (Am. Compl. at 8-9.) Plaintiff claims that despite these instructions from the doctor, when Defendants John Doe #3 and John Doe #4 transported Plaintiff back to Sing Sing, they bypassed Sing Sing's medical clinic and brought Plaintiff directly back to his cell. (*Id.* at 9.) As a result, Plaintiff avers, he did not receive the prescribed wound care and antibiotic at Sing Sing.

Despite Plaintiff's assertions that he never received his antibiotics and wound care while at Sing Sing, Plaintiff's allegations against Defendants John Doe #3 and #4 do not support a finding that they acted with deliberate indifference or that they even engaged in misconduct at all. There is no indication that Defendants John Doe #3 and #4 interfered with Plaintiff's transport to the hospital or with his medical care while there; rather, Plaintiff simply claims that Defendants John Doe #3 and #4 did not stop by Sing Sing's medical clinic upon their return from the hospital to discuss Plaintiff's treatment plan. The responsibility of Defendants John Doe #3 and #4 at the time was to transport Plaintiff to Westchester Medical Center and back, and they did just that; it is the responsibility of Sing Sing's medical staff to provide inmates with the appropriate medical care. While Plaintiff may have never received his antibiotics and wound care following his treatment at the hospital, the allegations in Plaintiff's Amended Complaint do not aver that Defendants John Doe #3 and #4 were personally responsible for this lack of continued treatment, acted with deliberate indifference to Plaintiff's medical conditions, or prevented Plaintiff from receiving treatment.

Accordingly, Plaintiff is unable to satisfy the subjective prong for an Eighth Amendment deliberate indifference to medical needs claim against Defendants John Doe #3 and #4 and the claims against these defendants must be dismissed.

### 4. Defendant John Doe #5

Plaintiff alleges that on the evening of February 16, 2024, after his initial visit to Westchester Medical Center, Sing Sing medical nurse Defendant John Doe #5 was distributing medications to inmates when Plaintiff inquired about his own. (*Id.*) Defendant John Doe #5 allegedly responded that there was no medication for Plaintiff. (*Id.*) Plaintiff claims he informed Defendant John Doe #5 that he was in pain and that his face was swelling, to which the nurse replied, "that's expected," and moved on without further evaluating Plaintiff's condition. (*Id.*) Plaintiff further asserts that on February 19, 2024—the day after his second hospital visit—he again asked Defendant John Doe #5 about his prescribed medication for "pain and swelling plus rash," but was completely ignored.

Here, Plaintiff has alleged sufficient facts to show that Defendant John Doe #5 acted with deliberate indifference to his medical needs. First, regarding the February 16 interaction, the fact that the nurse did not yet have or had not received Plaintiff's medication does not, without more, establish the required culpable mental state. However, the Court recognizes that by the time of Plaintiff's second inquiry, Plaintiff had visited the hospital a second time the day before, on February 18, 2024, during which time he reported pain, head swelling, numbness on the left side of his forehead, and a rash. (*Id.* at 10, 27.) At the hospital, he was diagnosed with an infection and cellulitis. (*Id.* at 26.) Plaintiff suggests that his infection resulted at least in part because he did not receive the wound care and antibiotic following his laceration repair, as prescribed by the hospital physician on February 16, 2024. (*See id.* at 10 ("Upon arriving I [saw] the nurse and doctor and they were livid that I was back so fast for infection and cellulitis of the face. And wasn't given the care at the facility that was prescribed when I first left, asking me did anyone check my wounds after I left the first time (I said no). Did I receive wound care? (No). Antibiotic? (No).")) While it is possible that Defendant John Doe #5 was unaware of all the circumstances surrounding

Plaintiff's medical condition, Plaintiff also suggests that, by February 19, 2024, his worsening condition was visible. (*See id.* (Plaintiff alleges that on the morning of February 18, 2024, a correction officer "took one look at [him] and called medical," after which Plaintiff "was rushed back to Westchester Medical Center")). Further, by the time of Plaintiff's second request for his medication, on February 19, 2024, it had been two days since Plaintiff had been prescribed the antibiotic, with no real explanation from Sing Sing's medical staff for why he was not getting it. Accordingly, because Plaintiff alleges that his lack of medication and wound care at Sing Sing contributed to the wound's infection and because Plaintiff alleges that Defendant John Doe #5 completely ignored his requests for his medication a second time, despite by then Plaintiff's visibly worsening condition, Plaintiff's allegations plausibly support a finding that Defendant John Doe #5 acted with deliberate indifference to Plaintiff's medical needs when he dismissed Plaintiff's request for his medication a second time.

### 5. Defendant John Doe #6

Plaintiff alleges that at approximately 11:00 p.m. on February 16, 2024, during the officers' go-around, Plaintiff asked correction officer Defendant John Doe #6 to be seen for an "emergency sick call" because he was in pain and his face had become increasingly swollen. (*Id.* at 9.) Plaintiff claims Defendant John Doe #6 told him that "no one is at the clinic" and that "this wasn't an emergency" and "[he] could wait until the morning shift." (*Id.* at 9.)

Here, Plaintiff fails to allege that Defendant John Doe #6 acted with the requisite culpable state of mind. The mere assertion that Defendant John Doe #6 denied Plaintiff's request for an emergency sick call, without additional supporting facts, does not establish deliberate indifference to Plaintiff's medical needs. Plaintiff does not explain how this denial caused substantial harm or exacerbated his medical condition. Moreover, it is not implausible that the facility's medical clinic

was closed at 11:00 p.m., which, if true, meant that Defendant John Doe #6 would not have been able to send Plaintiff there at that time anyway. By then, it had also only been a few hours since Plaintiff had returned from his initial visit to Westchester Medical Center, where he received adequate treatment. Although Plaintiff later received additional treatment at the hospital two days afterward—when he was diagnosed with an infection—he does not allege facts showing that Defendant John Doe #6 disregarded his medical needs, was aware of his condition, or contributed to Plaintiff's subsequent medical complications through his actions. Accordingly, because Plaintiff fails to aver any misconduct by Defendant John Doe #6, or that Defendant John Doe #6 acted with deliberate indifference to Plaintiff's medical condition, the claims against Defendant John Doe #6 must be dismissed.

### 6. Defendants John Doe #7 and #8

On February 20, 2024, New Jersey officers Defendants John Doe #7 and John Doe #8 picked Plaintiff up from his cell to transfer him to Essex County Correctional Facility in New Jersey, pursuant to an Interstate Agreement on Detainers ("IAD"). (*Id.* at 11) Plaintiff claims he told these officers that he had a "without fail appointment at the hospital" and prescribed medication, but the officers ignored his "pleas" and took him into their custody anyway, despite knowing that he was "seriously injured," thereby prolonging his recovery. (*Id.* at 11-12.)

First, there is no dispute that Plaintiff was supposed to follow up with the physician "without fail" one week after his second visit to the Westchester Medical Center on February 18, 2024, as evidenced by the medical records. (*See id.* at 26.) However, it was not the responsibility of Defendants John Doe #7 and John Doe #8 to ensure that Plaintiff make that appointment. The responsibility of these New Jersey officers was to transport Plaintiff from Sing Sing to Essex County Correctional Facility in New Jersey, pursuant to an IAD that had been signed more than a

month prior, and Defendants John Doe #7 and John Doe #8 did just that. Even if Plaintiff's medical condition had changed between when the IAD was signed and when Plaintiff was transported, Plaintiff's transport occurred on February 20, 2024, meaning he had not yet missed his "without fail" appointment *within one week* of February 18, 2024. If Plaintiff ultimately never made his follow-up appointment in a timely manner, Defendants John Doe #7 and John Doe #8 would not be to blame—either relevant personnel at Sing Sing failed to convey Plaintiff's medical condition to Essex County Correctional Facility and/or Essex County Correctional Facility failed to comply with Plaintiff's medical orders. Further, Plaintiff has failed to demonstrate that Defendants John Doe #7 and John Doe #8 intentionally delayed Plaintiff's treatment or that his transfer to New Jersey caused substantial harm or in some way worsened his condition. Accordingly, because Plaintiff has failed to allege that Defendants John Doe #7 and John Doe #8 acted with deliberate indifference to Plaintiff's medical condition, the claims against Defendants John Doe #7 and John Doe #8 must be dismissed.

### Leave to Amend

Under Fed. R. Civ. P. 15(a)(2), courts are to "freely give leave [to amend a pleading] when justice so requires. The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "futile", a request to replead "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The Court is not convinced that an opportunity to replead as to certain Defendants would be futile. While Plaintiff's Amended Complaint was filed without the Court's permission and after Defendants had served their motion to dismiss, Plaintiff's Amended Complaint was filed prior to the Court's ruling highlighting its deficiencies.  Nonetheless, the

Court finds that repleading as to Defendants Martuscello, Defendant Kopp, and Defendant Barnes would be futile as Plaintiff has pled sufficient facts for the Court to find that these particular Defendants were not personally involved in any of Plaintiff's alleged misconduct.

Accordingly, pro se Plaintiff is granted leave to file a Second Amended Complaint to replead the claims that were dismissed against John Does #2, #3, #4, #6, #7, and #8. A Second Amended Complaint will replace, not supplement, the Amended Complaint. Plaintiff shall file his Second Amended Complaint naming the newly identified individuals as defendants within 30 days of receiving the identity information of the unidentified John Doe defendants from the Attorney General of the State of New York, pursuant to the *Valentin* Order below. A Second Amended Complaint form that Plaintiff should complete is attached to this order. Once Plaintiff has filed a Second Amended Complaint, the Court will screen it and, if necessary, issue an order directing service on the newly identified defendants.

### *Valentin* Order

Under *Valentin v. Dinkins*, a pro se litigant is entitled to assistance from the district court in identifying an unidentified defendant and that defendant's service address. 121 F.3d 72, 76 (2d Cir. 1997). In the complaint, Plaintiff supplies sufficient information to permit DOCCS to identify the unidentified "John Doe" defendants. It is therefore ordered that the Attorney General of the State of New York, who is the attorney for and agent of DOCCS, ascertain the identities, service addresses, and, if appropriate, badge numbers of those unidentified "John Doe" defendants whom Plaintiff sues here. The Attorney General must provide this information to Plaintiff and the Court within 60 days of the date of this Opinion & Order.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. In particular, Defendant's motion to dismiss is granted as to claims against Defendant Martuscello, Defendant Kopp, Defendant Barnes, Defendant John Does #2, #3, #4, #6, #7, and #8 and denied as to claims against Defendant John Does #1 and #5. The claims against Defendant Martuscello, Defendant Kopp, and Defendant Barnes are dismissed with prejudice. The claims against Defendant John Does #2, #3, #4, #6, #7, and #8 are dismissed without prejudice with Plaintiff granted leave to replead the claims against these specific Defendants in a Second Amended Complaint. The Court directs the Attorney General of the State of New York to provide pro se Plaintiff and the Court with the identities, service addresses, and, if appropriate, badge numbers of the unidentified Defendants John Does #1–#8 within 60 days of this Opinion & Order, pursuant to the *Valentin* Order herewith. Pro se Plaintiff is directed to file a Second Amended Complaint as to John Does #2, #3, #4, #6, #7, and #8, if he wishes, within 30 days of receiving the identity information of the unidentified John Does from the Attorney General of the State of New York. If Plaintiff fails to file a Second Amended Complaint by the Court-ordered deadline, the claims dismissed without prejudice by this Opinion & Order will be deemed dismissed with prejudice. The Clerk of Court is kindly directed to mail a copy of this Opinion & Order to pro se Plaintiff at his address as it is listed on ECF and to show service on the docket and to terminate the motion at ECF No. 45.

SO ORDERED.

Dated: November 20, 2025
White Plains, New York

Hon. Nelson S. Roman
U.S. District Court Judge, S.D.NY.

21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

**SECOND AMENDED**
**COMPLAINT**

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                  Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                            State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

Defendant 2:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

Defendant 3:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

Defendant 4:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                        State              Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6